Today's case is number 24-1750, United States v. Craig Medoff. At this time, would counsel for the appellant come to the podium and introduce herself on the record to begin? Good afternoon, your honors. Amy Barsky for the appellant, Craig Medoff. And unless the court has questions about the sentencing issues, I'll focus on the recusal issue. Criminal contempt is sui generis. It's the only place in our legal system, as far as I know, that a person can face imprisonment on the opinion and the determinations of one human being. And our system endows judges with that power, whether it's summary contempt or contempt on notice, it endows them with the power to prosecute those cases sua sponte. And the section 401 has no statutory maximum. So we're here evaluating a 20-month sentence, but it could have been a five-year sentence, a 12-year sentence, a 30-year sentence. And so it is that much more important that this court evaluate when and under what circumstances we require a different judge to review and sentence defendants who have faced prosecution initiated by a judge. Here, the district court... Can I ask you a question? Of course. I'm wondering a little bit about how this case intersects with this civil case that preceded it. And in that case, as I understand it, over the course of about five months, the judge here mentions fairly regularly that there still is the possibility of criminal proceedings. He encourages the parties to reach an agreement in the civil contempt proceeding. I mean, I think at one point the transcript says he says if you could reach agreement on civil contempt, that would obviate the need for criminal contempt proceedings. And then as I read it, sort of your client apologizes to the court in an affidavit in the civil case for violating the 2016 order. He sort of admits guilt. And the judge confirms that. And then he starts criminal contempt proceedings almost immediately. And I guess I'm wondering, is that sort of travel of that case, that timeline, part of your argument that opening a criminal case immediately after getting the omissions on the record, that in that case the judge was sort of driving the prosecutorial train? Or is that something that really doesn't enter into your argument before us? I think it does enter into the argument here. I mean, I think the point that we have drawn on most heavily from the civil proceedings is that the district court, you know, very clearly and methodically was setting up the situation to prosecute contempt. The SEC was there. He asked them repeatedly about their perspective. He brought the U.S. Attorney's Office in and in every sense invited a prosecution of contempt. He was very careful to say at each step that if you reach agreement that may obviate the need for a criminal case, but I retain the discretion to prosecute a criminal contempt. Nonetheless, the SEC explicitly stated that they were satisfied that he had cured the contempt, that he had cooperated in the civil proceedings. The U.S. Attorney's Office implicitly declined to prosecute, and the district court went forward and prosecuted anyway. So that history absolutely is a part of our case. So one thing the court says, though, throughout is, I don't issue orders that I can't enforce. And he perceives, I think rightly, that criminal contempt is sort of part of the court's punishment power. And so I think, like, a different way of reading that record might be, okay, yes, he was presiding over the civil contempt proceeding in order to encourage Mr. Madoff to start paying on these fines, and then he has every right to punish under criminal contempt for exactly the reason that he's given all along. I don't disagree with that, actually. I think that at a certain point, though, there's sort of scale tips on how we evaluate whether this is the judge who should be ultimately sentencing this person for criminal contempt. And what did he do that makes you think he shouldn't be? So there's a lot of emphasis on filing the notice. Seems like Rule 42 contemplates that, and then says beneath that, in certain circumstances, it should be a different judge. This isn't one of those circumstances. So that doesn't answer the case, but at least it suggests sometimes judges will file notices and also preside on the case. So with that background, what else, because it can't just be filed a notice, so what else makes this one the one where he abused his discretion to carry on? So in addition to instituting proceedings, he then rejects two negotiated plea agreements. So can I ask you about timing? I think that's really important, because I actually did find that to be one of your more persuasive arguments to me. The motion to recuse is filed. He denies it. That's before the plea agreements. That was March 21st. The plea agreements are later. There's no subsequent motion to recuse. Now when it gets to the motion for bail pending appeal, he says, oh, other things were raised to me along the way, I guess, in that motion that I'll address here. But I guess what I'm wondering is, what is the universe of things we should look at? Because there's a moment you move to recuse, there's a moment he denies that, and then there's a series of other things that happen with no additional motion to recuse. It's not like this is a one and done kind of thing, because a judge's behavior can change over the course of the case. And you're going to tell me, I think it did because of the plea agreements, and yet no relief was sought. What do I do with that? Several things. First of all, Section 455A imposes the obligation to recuse regardless of a motion. He had that obligation at any point in time that a reasonable person knowing the facts might question his impartiality. Second, I think the court needs to also grapple with the reality that practitioners, particularly defense counsel, face in front of judges. That is, he was not pleased about the first recusal motion. He called it frivolous. He accused defense counsel of raising the motion in order to delay the case. He repeatedly suggested that in the plea agreement, for instance, he would not grant a motion for a Rule 11 hearing because holding the hearing would delay the trial date. And so the suggestion, while in theory makes sense that defense counsel should continue to renew the motion at every step, in practice, that's very difficult. And defense counsel is representing a human being who's going to be sentenced by this judge. And the district court gave every indication it was not going to recuse, so it was going to sentence this defendant. And so I think that the combination of those factors means that this court should evaluate the entire record and up to and including the actual sentence imposed. Because I think that had the district court in the situation not recused and ultimately imposed a three-month sentence or a six-month sentence, the recusal question might look very different. And had a different judge imposed the same sentence, the length of the sentence might look very different. But if you're pitting on the ongoing obligation to recuse, and yet there's been no motion, what do you say our standard of review is with respect to those subsequent acts that you say would justify recusal or require recusal? I think it's still abuse of discretion. So what if you came here and nobody filed a recusal motion, but you, the good appellate lawyer, gets this case and says, wow, I can't believe this happened down below. I'm arguing here he should have recused, and you tell me he has an ongoing right obligation to recuse. Is that the same? I think it's not the same. I think my argument would be weaker if I were in that position. But I would say that having raised it once, there is an obvious tension between the district court and this defendant throughout the case. But focusing on Judge Afram's question, if it's never been raised until appeal, do you still say that the standard that we apply is abuse of discretion? If I have to answer that question, it may be more deferential than abuse of discretion. But as in the Judge Torway, a concurrence that I cited in the brief, I think there's also an argument that the recusal statute requires the court to consider that issue regardless of whether it's raised by counsel. And if I could... I mean, I could put the, sort of, your argument in two ways. I mean, if you make the recusal, one of two things happens. What we hope a judge will do is what I think is to say, okay, you brought new things that happened since you filed the last motion, I'll consider it. Or he gets really upset and acts in a way that makes your argument here, like, much better. I mean, these are strategic choices, and there are pluses and minuses to everything. But the problem is, like, we haven't talked about the plea agreement yet, and I think that's helpful to you, and I think there are arguments against it. But that never was, I mean, until way late at least, brought to his attention such that he could reflect upon the question that now we're debating here, which is, did those statements, you know, really make it look like I'm not being impartial? I mean, don't we owe that to judges? Well, if I could proceed in answering your earlier question about what else, subsequent to the recusal motion, gives me reason to believe that he should have recused, there were a number of ways in which the court was essentially investigating this case, and those factual issues began all the way back in the civil case, because the court was concerned about whether or not my client could satisfy a monetary judgment. So at some point, he orders the SEC to conduct a financial audit of my client. He continues then to question the information that he receives in the declaration about my client's finances in particular. He questions whether my client essentially misrepresented facts in obtaining CJA counsel through saying that he was indigent. He questions whether my client had an associate named Mark Levy. He repeatedly questioned whether Mark Levy was hiding funds on Mr. Medoff's behalf. Well, his concern was if there was a disgorgement of $1.7 million, and this guy made $1.7 million, and is not going to pay anything, that could all factor into the question that he's facing. Has there been a radical sanction, or should I use criminal contempt? So I really do want to know. I mean, if it's just a paper, $1.7 million is never going to be paid, that may mean one thing, and if it's a real $1.7 million, that could mean another thing. Yes, it could. But further, there's a trust fund of which my client is a beneficiary. The district court repeatedly questioned whether my client could access the funds in the trust. There was also a credit card debt-slash-payment that had been made by Mark Levy. There were numerous factual questions about finances. And are those pertinent? So he makes a decision to file, to issue the show cause order that leads to the criminal contempt. And that's a decision that you can do or not, there's no requirement to do it. So is it wrong for the judge to gather the predicate facts to decide, should I do this? And if that's what he's doing, is that wrong? Does that show you it's not impartial? Let me say this. I think it shows up most strongly in document 812, which is an order in the civil case, and it's subsequent to the sentencing in this case, in which the district court at length suggests that the civil judgment should be payable immediately, therefore putting the burden on Mr. Medoff to produce evidence as to why he cannot pay. The court continues to say that he would need to bring in Mr. Levy to testify, that Mr. Medoff would need to testify about what efforts he made to ask the trustee for the money. Various things like this. My answer to your question is no, there's nothing wrong per se with those acts. In fact, those questions are things we would normally see and expect from a prosecutor. That the prosecutor would ask questions about where is this man's money? How is it that there's a million dollar trust fund and he hasn't been forced to pay? Or they would be asked by the SEC, but when you have the judge driving the questions, the government showed, as far as I can tell, essentially no interest in investigating these things or in calling those witnesses in and asking those questions. Instead, the government left the judge to do what clearly reads as if it is normal prosecutorial zealous advocacy on behalf of the United States. With the point at which the judge is doing that, I think we need to ask questions about whether the same judge should be sentencing the defendant. One of your arguments, or the arguments of the attorney below when filing the motion to recuse was, I think the judge refers the case for criminal prosecution, a CJA lawyer gets appointed and the trial date is set for, I think, 40 days from that appointment, which I think you say in your motion and you attach data to this that that's extremely unusual for a federal case to proceed so quickly. The average is about seven months. The judge, as I read that hearing transcript from when the trial date is set, says, well, but we know all the facts and you've already admitted your guilt, so I think we can do a pretty quick trial date. Why is that not an adequate reason for setting such a quick date here? Several reasons. One, for a defense counsel who has another load of cases, that's extraordinary to be told you should try this case in 40 days. Secondly, when the parties jointly agree to request an extension, the government has no opposition for the judge to insist that the case needs to progress that quickly. That's also a factor. Third, at one point, the judge suggested that he wasn't going to recuse because why burden another judge with becoming familiar with the facts when this judge already knew about the case? But if, in fact, the individual was going to plead because he had already admitted the situation, that's less of a concern if he's going to come forward and plead anyway. And fourth, because the timeline then forces what subsequently happened here, which is quick negotiations in which the district court is convening a hearing within a day or two of a request for Rule 11 motion, rejecting the plea agreement, repeating the same process, and then faulting Mr. Medoff for not pleading until the eve of trial. So there are a number of different ways in which that abbreviated timeline is outstanding and aggravates the facts that give a reasonable person reason to question. The standard is not would a reasonable person think the district court was impartial or would a reasonable person think the district court appeared to be impartial, but whether a reasonable person might even question whether the district court appeared to be impartial. Is your client currently incarcerated now, and if so, is there a release date set and what is it? It's August 4th of this year. He also has a longer term of supervised release that I think makes continuing sentencing issues relevant. Thank you. I forgot to reserve a minute for rebuttal, but if the judges would consider, I would like that. I don't think you'll need rebuttal time. Would counsel for the appellee please introduce himself on the record to begin? Donald Lockhart for the government. May it please the court. We've taken no position on the recusal issue. A procedural question came up, however, an argument that seems to cut across institutionally these cases. I'm happy to address the question of the standard of review that should apply. So it seems to us that you review for abuse of discretion that judges order denying recusal based on the events that occurred up until the point of denial of recusal. If you conclude that there was no abuse of discretion at that stage, you go forward and look to see whether under the plain error standard, the post-denial of recusal events coupled with the pre-denial of recusal events in the aggregate would satisfy the second prong of the plain error standard, requiring basically that it was clear, obvious in light of that full range of events that the judge was required to recuse. But I take it you don't have any objection to consideration of post-denial of recusal motion conduct by the judge that might bear on the judge's state of mind as of the denial of the recusal motion? No. That's the right answer. Yeah. Unless there are further questions, I can address the sentencing issues if you'd like. A question, the footnote about getting approval from somebody at the Department of Justice in order to join or to move for recusal, so that I don't have to continue to guess, why is that footnote in the brief? A couple reasons, Your Honor. Number one, helpful background, we thought, on just what an AUSA faces in a circumstance like this, in the abstract, where the office or the U.S. Attorney's Office is- But there's no special rule to oppose it. No, that's true. That's true. But the second, so we thought it was just helpful background, just so you know, we can't willy-nilly join a defendant in a recusal motion without getting approval at the AAG. But is there an implication in what you're saying? About what your actual view is? No, I don't think you should read anything into it, Your Honor. That's why I'm asking. Yeah, I think, frankly, the second reason we put the footnote in there was some hope that it might deter the panel from probing too deeply on our lack of position on recusal. So can we probe deeply and just ask why? Well, you could, but I would have to refer you to, I think, pages three through four of the gray brief, the reply brief, which you will see a block quote of Judge Wolf essentially interrogating the AUSA on why we were taking no position in that block quote. I think it's the closest we've come to sort of indicating- Has the U.S. Attorney's Office, to your knowledge, ever done this before? Taken a no position? I don't know. I just don't know on recusal. I'm just not sure. Have you taken positions opposing recusals before? Oh, yes. Yeah, including in a prominent case before the court. So I'm just curious, given your long experience in the office, the defendant's motion to recuse includes that exhibit showing the national averages for how long it takes for a case to go to trial. And I think it's roughly, I don't know, something like seven months. How common is it to see the type of timeline we had here, trial date set 40 days from the date of appointment and assented to motions that continue repeatedly denied? I would hazard to make a guess on that, Your Honor. It sounds fast to me. I can't really quantify it in terms of other cases. In your experience with the District of Massachusetts, how unusual is it for a district judge to reject a Rule C-1C plea agreement without the benefit of the pre-sentence report? Again, I think I would, I just don't have an adequate data set, I think, to answer that question. Have you seen that happen in the District of Massachusetts? I just don't know one way or the other. I'm not, I'm primarily an appellate advocate, and so some of these cases may have happened without my knowing about it. I just, I'm not in the district court setting enough to really appreciate how often something like that happens. Have you ever seen it happen? No, but I can't say the opposite either. I just don't have a decent enough sort of grounding in what's happening on that issue to be able to answer one way or the other. All right. Thank you. Thank you. That concludes argument in this case.